IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

MELISSA K. CRIDER,

    Plaintiff,

vs.

Commissioner of Social Security,

    Defendant.

Case No. 2:16-cv-01809
**OPINION AND ORDER**

AIKEN, Judge:

Plaintiff Melissa K. Crider brings this action pursuant to the Social Security Act ("Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons set forth below, the Commissioner's decision is AFFIRMED.

## BACKGROUND

On November 28, 2012, plaintiff applied for DIB and SSI. She alleged disability beginning April 4, 2012, due to a coagulation disorder, other diseases of the circulatory system, and affective disorders.

Page 1 – OPINION AND ORDER

Plaintiff's applications were denied initially and upon reconsideration. On May 7, 2015, plaintiff appeared at a hearing before an ALJ. The ALJ found plaintiff not disabled in a written decision issued August 8, 2016. After the Appeals Council denied review, plaintiff filed a complaint in this Court.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based upon proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r Soc. Sec.*, 740 F.3d 519, 522 (9th Cir. 2014) (citation and quotation marks omitted). The court must weigh "both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). If the evidence is subject to more than one interpretation but the Commissioner's decision is rational, the Commissioner must be affirmed, because "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## THE ALJ'S FINDINGS

The initial burden of proof rests upon the plaintiff to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a)(4); *id.* § 416.920(a)(4). At step one, the ALJ found plaintiff had not engaged in "substantial gainful activity" since the alleged disability onset date. 20 C.F.R. §§ 404.1520(a)(4)(i), (b); *id.* §§ 416.920(a)(4)(i), (b). At step two, the ALJ found plaintiff had the following severe impairments:

> prothrombin gene mutation with pulmonary embolism; right knee degenerative arthritis with spondopalatia; right shoulder tendonitis; thoracic spine disc protrusion at T7-8; obesity; obstructive sleep apnea; status post hysterectomy; status post traumatic head injury with headaches; major depressive disorder; panic disorder; pain disorder secondary to psychological factors and general medical condition (20 CFR 404.1520(c) and 416.920(c)).

Tr. 23; 20 C.F.R. §§ 404.1520(a)(4)(ii), (c); *id.* §§ 416.920(a)(4)(ii), (c). At step three, the ALJ determined plaintiff's impairments, whether considered singly or in combination, did not meet or equal "one of the listed impairments" that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d); *id.* §§ 416.920(a)(4)(iii), (d).

The ALJ then assessed plaintiff's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e); *id.* § 416.920(e). The ALJ found that plaintiff has:

> the [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the individual can lift or carry 10 pounds occasionally and 5 pounds frequently; no limitation on sitting; stand or walk two hours total, in any combination, per eight-hour workday with normal breaks, but no more than 15 minutes standing at a time every hour; no climbing ladders, ropes, or scaffolds; occasional climbing ramps or stairs, stooping, crouching, kneeling, crawling, and balancing; occasional overhead reaching with the right upper extremity; avoid concentrated exposure to extreme heat or cold; and no exposure to unprotected heights or hazardous machinery. The individual would have the following mental nonexertional limitations: can perform simple and more complex tasks; would do best working independently but can have superficial contact with coworkers in a non-teamwork setting; would do best with supportive supervision, which would allow flexibility to take normal break times outside the normally structured break times (e.g., take the breaks 15 minutes earlier than the normal times or 15 minutes later than the normal times); and no stressful public environments where the

individual would have to deal with member of the public who are confrontational or challenging.

Tr. 23. At step four, the ALJ concluded plaintiff is capable performing past relevant work as a receptionist, accounting clerk, data entry clerk, and manicurist. The ALJ concluded that such work would "not require the performance of work-related activities precluded by [plaintiff's] [RFC]." 20 C.F.R. §§ 404.1520(a)(4)(iv), (f). At step five the ALJ found that plaintiff could perform work existing in the national economy; specifically, plaintiff could work as a call out operator or a sewing machine operator. 20 C.F.R. §§ 404.1520(a)(4)(v), (g)(1). Accordingly, the ALJ found plaintiff not disabled and denied her applications for benefits.

## DISCUSSION

Plaintiff contends that the ALJ committed four harmful errors with respect to properly crediting key evidence in making his decision. First, plaintiff argues that the ALJ erred by not providing clear and convincing reasons for finding plaintiff less than fully credible. Second, plaintiff asserts that the ALJ failed to correctly assess lay testimony causing legal error. Third, plaintiff asserts that the ALJ failed to provide clear and convincing reasons to reject or omit medical opinions. Finally, plaintiff avers the ALJ failed to incorporate all medical findings into plaintiff's RFC causing legal error.

I.   *Plaintiff's Subjective Symptom Statements*

I begin by addressing plaintiff's argument that the ALJ failed to provide clear and convincing reasons for finding plaintiff testimony less than fully credible.

When a claimant's medically documented impairments reasonably could be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v.*

Page 4 – OPINION AND ORDER

*Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). Three examples of specific, clear and convincing reasons for discounting a claimant's testimony include (1) inconsistency with objective medical records, *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004); (2) conservative and/or effective treatment, *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995); and (3) testimony of symptoms is inconsistent with activities of daily living, *Molina*, 674 F.3d at 1113.

A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

Here, the ALJ held that plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms "are not entirely credible." (Tr. 26) In discrediting plaintiff's symptom statements, the ALJ offered specific, clear and convincing reasons for doing so.

First, the ALJ pointed to inconsistency with objective medical records, specifically that radiographic evidence showed mild or no issues with regard to plaintiff's alleged impairments. The ALJ correctly pointed to three specific pieces of radiographic evidence that show this inconsistency with plaintiff's alleged impairments: (1) a March 2015 CT scan that showed no acute intracranial hemorrhage, no acute calvarial abnormalities and no other abnormality of plaintiff's brain after the traumatic head injury (Tr. 775-79); (2) an August 2013 MRI of

plaintiff's shoulder that showed tendinopathy but no rotator cuff tear and only inferior spurring and impingement (Tr. 699-708); and (3) an April 2010 x-ray of plaintiff's right knee that showed "minor degenerative arthrosis" (Tr. 469). The ALJ correctly discredited plaintiff's statements regarding her symptoms due to these specific radiographic evidences that are inconsistent with plaintiff's symptom statements.

The second reason the ALJ discredited plaintiff's symptom statements is that there were more inconsistencies with objective medical records, that is, physical and mental status examinations showed that plaintiff is not significantly limited. (Tr. 26) In giving evidence of this inconsistency, the ALJ correctly pointed to medical records describing plaintiff's range of motion in her upper right extremity as "limited active." (Tr. 747) Another medical record describes plaintiff's muscle strength as "5/5 in all major muscle groups of arms/legs." (Tr. 794) Mental health records also show inconsistencies with plaintiff's symptom statements. Medical records describe plaintiff's psychiatric health as "appropriate" (Tr. 349, 748) and "normal" (Tr. 729). These medical records demonstrate inconsistencies with plaintiff's symptom statements and are an appropriate reason to discredit plaintiff's statements.

The third reason the ALJ discredited plaintiff's symptom statements is because the treatment that plaintiff has received for impairments has been essentially routine and/or conservative in nature. (Tr. 26) For instance, although one physical therapist set forth goals and a plan of treatment, medical records indicate that plaintiff only attended physical therapy appointments for less than three months and canceled a number of appointments and "never called back for further [physical therapy]." (Tr. 711) This conservative route of treatment by plaintiff is a specific, clear and convincing reason for discounting plaintiff's symptom statements.

The fourth reason the ALJ discredited plaintiff's symptom statements is because the record revealed that some of the forms of the plaintiff's treatment options and medication have been successful in controlling the allegedly disabling symptoms. (Tr. 26) Medical records indicate that treatment options and medications have been successful including physical therapy that decreased pain (Tr. 712) ("[Pain] is getting better."); weight loss of 26 pounds since starting Phentermine (Tr. 749); "good results" in treating depression with Zoloft (Tr. 773); and notation that plaintiff is "making progress" due to mental health treatment (Tr. 838). This evidence of effective treatment is another specific, clear and convincing reason for discounting plaintiff's symptom statements.

The fifth reason the ALJ discredited plaintiff's symptom statements is because plaintiff's described daily activities are inconsistent with what would be expected given plaintiff's complaints of disabling symptoms and limitations. (Tr. 26) Inconsistent daily activities include coaching softball and volleyball (Tr. 659), otherwise participating in softball (Tr. 681), and "walking 1.5-2 miles/day" (Tr. 751). Together, these inconsistencies between plaintiff's testimony of symptoms and her activities of daily living constitute a specific, clear and convincing reason for discounting plaintiff's symptom statements.

Again, the ALJ gave at least five specific, clear and convincing reasons to discount the testimony of plaintiff. The ALJ did not simply give a general assertion that plaintiff is not credible. Rather, the ALJ pointed to these instances of plaintiff's testimony not being credible coupled with specific evidence in the record for not finding the testimony credible. I find that the ALJ did not err in discounting plaintiff's testimony.

///

///

II. *Evaluation of Lay Witness Statements*

Plaintiff further challenges the ALJ decision because she alleges that the ALJ failed to correctly assess lay testimony causing legal error.

In general, "lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence . . . and therefore cannot be disregarded without comment." *Nguyen v. Cater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (emphasis omitted). This is because "[a]n eyewitness can often tell whether someone is suffering or merely malingering," particularly if the witness "view[s] the claimant on a daily basis[.]" *Dodrill*, 12 F.3d at 919. An ALJ may discount lay witness testimony only by providing reasons that are "germane" to each witness. *Id.* Reasons that are at least germane in which an ALJ may discount lay witness testimony include (1) inconsistencies or contradictions with medical evidence, *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001), and (2) internal inconsistencies in a statement. *Robinson v. Berryhill*, 690 F. App'x 520, 524 (9th Cir. 2017); *see also Oregon v. Barnhart*, 26 F. App'x 691, 693 (9th Cir. 2002) (internal inconsistencies between statements is a clear and convincing reason to discount credibility). Clear and convincing reasons to discount lay witness credibility also constitute germane reasons. *Khal v. Berryhill*, 690 F. App'x 499, 502 (9th Cir. 2017).

Further, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114.

Here, the ALJ considered non-medical opinions from plaintiff's friends, Marilyn Savage and Kathie Stoddard, but only gave those lay witness opinions "some weight". (Tr. 28) The ALJ noted that these lay witness opinions are consistent with each other but not consistent with

mental health treatment records. *Id.* Both opinions state that plaintiff has difficulty with memory and concentration (Tr. 290, 298), but medical records state that plaintiff's memory is "intact" and concentration is "normal" (Tr. 794).

Further, there is some internal inconsistency with the opinion of Marilyn Savage which stated that plaintiff had many physical limitations but also admitted plaintiff participated in daily activities like shopping and driving. (Tr. 28-29; Tr. 285-90)

The ALJ held that the lay witnesses' testimonies are inconsistent or contradict with mental health treatment records. (Tr. 28) This germane reason alone is likely sufficient for discounting the lay witness testimony. However, the ALJ gives a further reason for discounting lay witness Marilyn Savages's testimony, that is, it is internally inconsistent. (Tr. 28-29)

Because the ALJ offered at least germane reasons for doing so, the ALJ properly discounted lay witnesses' testimony.

III. *Evaluation of the Medical Opinion Evidence*

Plaintiff further challenges the ALJ decision because the ALJ failed to provide clear and convincing reasons to reject or omit medical opinions.

There are three types of medical opinions in Social Security disability cases: those of treating, examining, and reviewing physicians. *Holohan v. Massanari*, 246 F.3d 1195, 1201–02 (9th Cir. 2001). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.* at 1202; *accord* 20 C.F.R. § 404.1527(d). "[C]lear and convincing" reasons are required to reject a treating doctor's ultimate conclusions. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). When a treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion unless the Commissioner provides "specific and

legitimate reasons" supported by substantial evidence in the record for so doing. *Id.* (citing *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983).

Non-acceptable medical sources are commonly categorized as "other sources." *Molina*, 674 F.3d at 1111. An ALJ may discount testimony from other sources if the ALJ gives germane reasons for doing so. *Id.* Qualified Mental Health Professionals ("QMHP") are defined as "other sources," are not acceptable medical sources, and are thus entitled to lesser deference. 20 C.F.R. § 404.1513(d) (2013); *Molina*, 674 F.3d at 1111; *Moon v. Colvin*, 139 F. Supp. 3d 1211, 1222 (D. Or. 2015). Again, the ALJ need only give germane reasons to discount such opinions. *Molina*, 674 F.3d at 1111. Germane reasons to discount opinions include lack of support, *Thomas*, 278 F.3d at 957, and internal inconsistencies in the opinion, *Robinsol*, 690 F. App'x at 524.

"The ALJ is responsible for resolving conflicts in the medical record." *Carmickle*, 533 F.3d at 1164. "Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). "[T]he consistency of the medical opinion with the record as a whole" is a relevant consideration in weighing competing evidence. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).

A. *Treating Physician Andrea Janssen, M.D.*

The ALJ placed less-than full weight on the opinion of treating physician, Andrea Janssen, M.D., plaintiff's primary care provider since November 2009. (Tr. 27) The ALJ placed partial weight on the opinion regarding plaintiff's ability to perform light work with exceptions including lifting or carrying 20 pounds occasionally and less than 10 pounds frequently and never performing manipulative activities like reaching or handling. *Id.* The ALJ placed

moderate weight on the exceptions of plaintiff occasionally performing postural activities like stooping and standing or walking two hours per eight-hour workday. *Id.*

The ALJ did not give the opinion of treating physician, Andrea Janssen, M.D. controlling weight. *Id.* The ALJ was thus able to apply factors in 20 C.F.R. § 404.1527(c)(2)(i)-(ii) and (c)(3) through (c)(6) in determining the weight to give the medical opinion. The ALJ gave less than full weight to Dr. Janssen's opinion noting concerns regarding supportability and consistency. (Tr. 27) These are legitimate reasons for giving less than full weight to a treating physician's opinion that is not controlling. 20 C.F.R. § 404.1527(c)(4)-(5). Specifically, the ALJ notes that Dr. Janssen's "treatment notes and other evidence of record do not support the severity of the physical limitations set forth in much of this opinion." (Tr. 27).

The ALJ did not err in declining to give the opinion of treating physician, Andrea Janssen, controlling weight. Regarding supportability, Dr. Janssen's opinion gives little to no medical evidence to support her opinion. (Tr. 844-50) "Objective medical evidence means signs, laboratory findings, or both." 20 C.F.R. § 404.1502(1)(f). Dr. Janssen's opinion came by means of completing a questionnaire provided by plaintiff's attorney and was not supplemented with objective medical evidence. (Tr. 844-50)

Further, regarding consistency, Dr. Janssen's opinion is lacking in consistency with the record as a whole. For example, Dr. Janssen opined that plaintiff would need a cane to ambulate (Tr. 850), but other evidence tells of plaintiff playing softball, walking two miles a day and having generally a normal gait. (Tr. 659, 681, 751, 794)

The opinion of Dr. Janssen is contradicted with the opinion of medical expert Judy Panek, M.D. The ALJ gave Dr. Panek's testimony "significant weight." (Tr. 27) In contrast to Dr. Janssen, Dr. Panek found that plaintiff has an RFC of lifting and carrying ten pounds

occasionally, five pounds frequently, and standing or walking up to two hours in an eight-hour day. (Tr. 50) Dr. Panek also gave no restrictions on pushing or pulling of arm or leg controls. *Id.*

The ALJ gave specific and legitimate reasons for giving more weight to Dr. Panek's opinion over the opinion of plaintiff's treating physician, Dr. Janssen. First, the ALJ notes that Dr. Panek had the entire longitudinal record of evidence to review, whereas Dr. Janssen did not. (Tr. 27) Second, the ALJ noted that Dr. Panek testified at the hearing and was subject to cross examination. *Id.*; *see Andrews v. Shalala*, 53 F.3d 1035, 1042 (9th Cir. 1995) (holding that more weight may be given to the opinion of the non-treating physician where that physician testifies at a hearing and is subject to cross examination).

Because the ALJ offered specific, clear and convincing reasons, the ALJ did not err in discounting treating physician Dr. Janssen's opinion. Furthermore, the ALJ did not err in giving more weight to Dr. Panek, a medical expert and a non-treating physician, because the ALJ provided specific and legitimate reasons supported by substantial evidence in the record.

B. *Psychotherapist Mairi Nielsen, Q.M.H.P.*

The ALJ placed little weight on the opinion of plaintiff's psychotherapist, Mairi Nielsen, QMHP. (Tr. 28) Ms. Nielsen opined that plaintiff is extremely limited in almost every facet of her ability to do work-related activities on a day-to-day basis in a regular work setting. *Id.* The ALJ took issue and discounted this opinion for two reasons: (1) "The treatment notes and other evidence of record do not support the severity of the physical limitations set forth in much of [the Ms. Nielsen's] opinion" and (2) Ms. Nielsen's opinion is "internally inconsistent." *Id.*

1. *Lack of Support*

Ms. Nielsen asserted that plaintiff is extremely limited in almost every facet in her ability to perform unskilled work. (Tr. 840-42) However, the ALJ noted that treatment notes and other evidence of record do not support the severity of the physical limitations set forth in much of Ms. Nielsen's opinion. (Tr. 28) Evidence that does not support these limitations include plaintiff's sporting and walking activities (Tr. 659, 681, 751) and plaintiff's ability to drive and care for her daughter (Tr. 285-300)

*2. Internal Inconsistency*

The ALJ found that Ms. Nielsen's opinion is internally inconsistent. (Tr. 28) Notably Ms. Nielsen indicated that plaintiff could manage her own benefits if awarded (Tr. 842), but that plaintiff is extremely limited in her ability to understand short and simple instructions or deal with normal work stress (Tr. 841-42). Ms. Nielsen indicated a GAF of 45 (Tr. 836), but her opinion suggests an even lower score (marking "extremely limited" on 75% of plaintiff's mental abilities and aptitudes needed to do unskilled work) (Tr. 841-42). Additionally, Ms. Nielsen indicated that plaintiff's conditions do not deteriorate over time (Tr. 839), but then Ms. Nielsen indicates a lowering GAF score (Tr. 836).

The lack of support for Ms. Nielsen's opinion that plaintiff is extremely limited in almost every facet in her ability to perform unskilled work is a germane reason to discount Nielsen's opinion. Further, Ms. Nielsen's opinion is a medical source for which germane reasons are needed to discount the opinion. The reasons of lack of support and internal inconsistencies are sufficient to discount Nielsen's opinion.

IV. *Assessment of Plaintiff's Residual Functional Capacity*

Finally, plaintiff avers that the ALJ decision erred in failing to incorporate all medical findings into plaintiff's RFC.

The ALJ determines a claimant's RFC. 20 C.F.R. § 416.920(e). RFC is "what [one] can still do despite [one's] limitations." 20 C.F.R. § 416.945(a)(1). It is "based on all the relevant medical and other evidence in [the] case record." *Id.* If a claimant has multiple impairments, they are all included in the assessment. § 416.920(a)(2). The ALJ must consider a claimant's physical and mental abilities, § 416.920(b) and (c), as well as the total limiting effects caused by medically determinable impairments and the claimant's subjective experiences of pain, § 416.920(e). The RFC is used at step four to determine if a claimant can do past relevant work and at step five to determine if a claimant can adjust to other work. *Id.*

In determining the RFC, the ALJ is not required to discuss every piece of medical evidence. *Lusardi v. Astrue*, 350 F. App'x 169, 173 (9th Cir. 2009). However, if the ALJ rejects significant probative evidence, the ALJ must explain the reason for the rejection. *Id.* The ALJ is not required to consider evidence that has already been discredited or discounted. *Dean v. Comm'r of Soc. Sec.*, 504 F. App'x 563, 566 (9th Cir. 2013).

Here, the ALJ properly discounted medical and vocational evidence presented on plaintiff's behalf. Plaintiff challenges the ALJ decision because the ALJ failed to incorporate all medical findings into plaintiff's RFC. (doc. 13 at 27) However, in making this assignment of error, plaintiff does not point to specific omissions of evidence, but simply states circularly that the RFC is "unsupported by the evidence because it is not based upon all of the evidence." *Id.* While it is true that the ALJ discounted evidence, those instances were addressed above with explanations for the reasons for rejection or discretization.

Because the ALJ was not required to consider evidence that had previously been rejected, discredited, or discounted, the ALJ did not err in not incorporating all medical findings into plaintiff's RFC.

## CONCLUSION

The Commissioner's decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

Dated this 24 day of October 2017.

／s／ Ann Aiken
Ann Aiken
United States District Judge